**IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA**

CRYSTAL WATTS,                        )
                                     )
            Plaintiff,               )
                                     )
v.                                   )        Case No. CIV-17-149-KEW
                                     )
COMMISSIONER OF THE SOCIAL           )
SECURITY ADMINISTRATION,             )
                                     )
            Defendant.               )

## OPINION AND ORDER

Plaintiff Crystal Watts (the "Claimant") requests judicial
review of the decision of the Commissioner of the Social Security
Administration (the "Commissioner") denying Claimant's application
for disability benefits under the Social Security Act.  Claimant
appeals the decision of the Administrative Law Judge ("ALJ") and
asserts that the Commissioner erred because the ALJ incorrectly
determined that Claimant was not disabled.  For the reasons
discussed below, it is the finding of this Court that the
Commissioner's decision should be and is REVERSED and the case
REMANDED to Defendant for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the
"inability to engage in any substantial gainful activity by reason
of any medically determinable physical or mental impairment. . ."
42 U.S.C. § 423(d)(1)(A).  A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied.  Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted).  The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).  The court may not re-weigh the evidence nor substitute its discretion for that of the agency.  Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight."  Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

## Claimant's Background

Claimant was 22 years old at the time of the ALJ's decision. Claimant completed her high school education.  Claimant has no past relevant work.  Claimant alleges an inability to work beginning March 25, 1993 due to limitations resulting from hearing problems, a learning disability, asthma, inactive tuberculosis, allergies, acid reflux, high blood pressure, knee problems, borderline intellectual functioning, and affective and anxiety disorders.

## Procedural History

On April 14, 2014, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) and for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act.  Claimant's applications were denied initially and upon reconsideration.  On November 23, 2015, Administrative Law Judge ("ALJ") Deidre O. Dexter conducted an administrative hearing in McAlester, Oklahoma.  The ALJ entered an unfavorable decision on March 11, 2016.  The Appeals Council denied review on February 17, 2017.  As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal.  20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made her decision at step five of the sequential evaluation.  She determined that while Claimant suffered from severe impairments, she did not meet a listing and retained the residual functional capacity ("RFC") to perform less than a full range of light work.

## Errors Alleged for Review

Claimant asserts the ALJ committed error in (1) failing to find Claimant's impairments meet or equal a listing; and (2)  failing to

4

perform a proper credibility analysis.

## Consideration of a Listing

In her decision, the ALJ found Claimant suffered from the severe impairments of right knee complex lateral discoid meniscus tear and large medial plica with significant synovitis, status post right knee arthroscopy, borderline intellectual functioning, and affective and anxiety disorders. (Tr. 18). The ALJ determined Claimant retained the RFC to perform less than a full range of light work. In so doing, she found Claimant could lift/carry, push/pull up to ten pounds frequently and 20 pounds occasionally; could sit for up to six hours out of an eight hour workday; could stand and/or walk up to four hours in an eight hour workday. Claimant could occasionally use foot controls with the right lower extremity; occasionally climb ramps and stairs but never climb ladders, ropes, or scaffolds. Claimant was able to frequently balance and stoop, occasionally kneel, crouch, or crawl. She should never be exposed to unprotected heights or moving mechanical parts. Claimant was found to be able to perform simple, routine, and repetitive tasks, and was able to make simple work-related decisions. Claimant was able to occasionally interact with supervisors as required to receive work instructions. Claimant was able to work in proximity to co-workers, but should have no more than occasional direct

5

interaction with co-workers.  Claimant should never interact with the general public.  She must not be required to do more than simple reading.  (Tr. 27).

After consultation with a vocational expert, the ALJ determined Claimant could perform the representative jobs of small products assembler, inspector packer, and electrical accessories assembler, all of which the ALJ found existed in sufficient numbers in the national and regional economies.  (Tr. 42).  As a result, the ALJ concluded that Claimant was not under a disability from April 1, 2014 through the date of the decision.  (Tr. 43).

Claimant contends the ALJ erred at concluding that she did not meet or equal a listing.  The ALJ is required to follow the procedure for determining mental impairments provided by regulation.  20 C.F.R. §§ 404.1520a, 416.920a; *See*, Listing of Impairments.  The procedure must be followed for the evaluation to be considered valid.  Andrade v. Sec. of Health & Human Services, 985 F.2d 1045, 1048 (10th Cir. 1993).  The ALJ must first determine whether there are medical findings of mental impairment especially relevant to the ability to work found in Part A of the Listing of Impairments.  20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). Additionally, Claimant must show he satisfies two of the following required restrictions:  (1) marked restriction in activities of

daily living; or (2) marked difficulties in maintaining social

functioning; or (3) marked difficulties in maintaining

concentration, persistence, or pace; or (4) repeated episodes of

decompensation, each of extended duration. 20 C.F.R. Pt. 404,

Subpt. P, App. 1, 12.00C, 12.04. The ALJ must then either evaluate

the degree of functional loss resulting from the impairment, using

the Part B criteria, or examine the special criteria set forth in

the listings for evaluating the severity of particular impairments.

In asserting a condition meets a listing, a claimant bears the

burden of demonstrating that his impairment "meet[s] all of the

specified medical criteria. An impairment that manifests only some

of those criteria, no matter how severe, does not qualify."

Sullivan v. Zebley, 493 U.S. 521, 530 (1990).

To meet or equal Listing § 12.05C, a claimant must demonstrate

the following:

> 12.05 Mental Retardation: Mental retardation refers to
> significantly subaverage general intellectual functioning
> with deficits in adaptive functioning initially
> manifested during the developmental period; i.e., the
> evidence demonstrates or supports onset of the impairment
> before age 22.
>
> The required level of severity for this disorder is met
> when the requirements in A, B, C, or D are satisfied.
>
> *  *  *
>
> C. A valid verbal, performance, or full scale IQ of 60
> through 70 and a physical or other mental impairment
> imposing an additional and significant work-related

limitation of function.

*  *  *

20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 12.05C.

Claimant must satisfy all of these required elements for a Listing to be met. Sullivan v. Zebley, 493 U.S. 521, 530 (1990). The Social Security Administration's Program Operations Manual System ("POMS") No. DI 24515.056(D)(1)(c) provides the following instructions under Listing 12.05C:

> Slightly higher IQ's (e.g., 70-75) in the presence of other physical or mental disorders that impose additional and significant work-related limitations of function may support an equivalence determination. It should be noted that generally higher the IQ, the less likely medical equivalence in combination with another physical or mental impairment(s) can be found.
>
> POMS DI 24515.056(D)(1)(c).

"This evaluation tool, however, is used only when 'the capsule definition'" — i.e., the introductory paragraph of Listing 12.05 is satisfied. Crane v. Astrue, 369 F. Appx. 915, 921 (10th Cir. 2010) (quoting POMS DI 24515.056(B)(1)). The introductory paragraph or "capsule definition" of Listing 12.05 requires a claimant to satisfy three criteria: (1) "significantly subaverage general intellectual functioning;" (2) "deficits in adaptive behavior;" and (3) "manifested deficits in adaptive behavior before age 22." Wall v. Astrue, 561 F.3d 1048, 1062 (10th Cir. 2009); Randall v. Astrue, 570 F.3d 651, 661 (5th Cir. 2009).

The ALJ stated in her decision that she evaluated Claimant's

8

mental impairments and determined that they did not meet or equal the criteria for Listings 12.04, 12.05, and 12.06. She evaluated the paragraph B criteria and found Claimant had mild restrictions in activities of daily living, moderate difficulties in social functioning, moderate difficulties in concentration, persistence or pace, and had experienced no episodes of decompensation of extended duration. (Tr. 23-25). She acknowledged Claimant's IQ score of 69

> would seem to substantiate onset of 'significantly subaverage general intellectual functioning' during the developmental period sufficient to meet listing 12.05C, as the claimant scored a performance IQ of 69 on the January 7, 2013 Wechsler Adult Intelligence Scate – Third Edition, (Exhibit B7F), and she has a physical or other mental impairment that imposes an additional and significant work-related limitation of function.

(Tr. 26).

The ALJ, however, also concluded that Claimant had no "deficits in adaptive functioning" required by Listing 12.05C. Deficits in adaptive functioning under the DSM-IV encompasses "how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, in the areas of communication, self-care, home living, social/interpersonal skills, use of community resources, self-direction, functional academic skills, work, leisure, health and safety." DSM-IV at 42, 49.

The ALJ determined that Claimant completed the adult function report and responded to questions asked of her. She found Claimant had no problems with personal care, could feed herself, and take

medication.  She does not live in a supportive living environment despite living with her family, prepares meals, does household chores, was married, spends time with others, attends church, goes shopping, relates well, was cooperative on examination, accessed community resources, and does not require another individual to direct her activities.

Claimant graduated from high school with an Individualized Education Program in place.  She began college but failed some courses.  She completed Vo-Tech training for child development, and worked part time at the Salvation Army Thrift Store.  She watched television, plays games, and reads.  Claimant took her medication and attended appointments.  She follows basic safety precautions with no evidence of a requirement for supervision and was not a risk to harm herself or others.  As a result, the ALJ concluded Claimant did not demonstrate any "deficits in adaptive functioning" as required by Listing 12.05C.  (Tr. 26-27).

Claimant admittedly has moderate limitations in the area of social functioning and concentration, persistence, or pace.  (Tr. 24).  It also appears from the record that Claimant has deficits in communication to which she testified and the Oklahoma Department of Rehabilitation Services recognized.  (Tr. 68-69, 294).  Claimant also expressed an inability to understand instructions by her supervisor at the Salvation Army Thrift Store.  (Tr. 71).  She required someone to help her remember what she was supposed to do

and how she was supposed to do it.  (Tr. 72).

This Court concurs with our sister courts which have pointed out that Listing 12.05 does not require a showing that Claimant may engage in no adaptive functioning but rather must only show "deficits in adaptive functioning." *See* Gardner v. Colvin, 2015 WL 4598802, *6 (D. Kans.).  Claimant may well be able to engage in activities of daily living with only limited restrictions but still demonstrate deficits in adaptive functioning in other areas such as social functioning, communication, and concentration.  The ALJ's conclusion that Claimant has no deficits in adaptive functioning is not supported by substantial evidence.  On remand, the ALJ shall assess the entirety of the record to reconsider this finding.

## Credibility Determination

Claimant challenges the adequacy of the ALJ's credibility findings.  The ALJ found Claimant was not "entirely credible".  (Tr. 29).  Later in the decision, the ALJ found Claimant "only partially credible."  Her finding was based upon a thorough examination of the medical record and the inconsistencies of those treatment records with Claimant's statements.

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995).  "Credibility determinations are peculiarly in the province of the finder of fact" and, as such,

will not be disturbed when supported by substantial evidence. Id.

Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3. The ALJ's credibility assessment is in line with her obligations under the regulations and is supported by substantial evidence.

### Conclusion

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, this Court finds, in accordance with the fourth sentence of 42 U.S.C. § 405(g), the ruling of the Commissioner of Social Security Administration should be and is **REVERSED and the case is REMANDED to Defendant for further proceedings consistent**

**with this Opinion and Order.**

IT IS SO ORDERED this 28th day of September, 2018.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE